J-S01013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.C.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.L.C., BIOLOGICAL | : | |
| FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1712 MDA 2018 |

Appeal from the Order Entered October 2, 2018
In the Court of Common Pleas of Lebanon County
Orphans' Court at No(s):  2017-701

BEFORE:   PANELLA, P.J., MURRAY, J., and PELLEGRINI[*], J.

MEMORANDUM BY PANELLA, P.J.:                **FILED FEBRUARY 19, 2019**

C.L.C. ("Father") appeals from the order entered October 2, 2018, in the Court of Common Pleas of Lebanon County, that granted the petition of M.B. and A.B., and involuntarily terminated his parental rights to his son, J.C.C. ("Child"), pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b) of the Adoption Act, 23 Pa.C.S.A. §§ 2101–2938.[1]  After careful review, we affirm.

Child was born in June of 2014 to Mother and Father.  ***See*** N.T., 4/17/18, at 7-8, 14.  Prior to Child's birth, Mother and Father were in a relationship.  ***See id.*** at 56.  However, by the time of Child's birth, Mother and Father had separated.  ***See id.*** at 56-57.  Father was arrested in early 2014

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court voluntarily terminated the parental rights of Child's mother, J.V. ("Mother").  Mother did not file a notice of appeal and has not participated in this appeal.

for a number of drug and firearms related offenses. In June of 2014, Father pled guilty to various charges and was sentenced to five to thirteen years of incarceration. *See id.* at 110. His earliest release date is late April of 2019. *See id.* Following Child's birth, Mother cared for Child for approximately six weeks. *See id.* at 59. Thereafter, she too was incarcerated. *See id.* After Child moved between various family members, Mother's cousin, M.B., and his wife, A.B., agreed to care for Child. *See id.* at 8-18. Child has lived with M.B. and A.B. since he was an infant. *See id.* at 28-30.

Father has never met Child. *See id.* at 92-93. Father filed a complaint in custody in March of 2015 seeking custody of Child. *See* Petitioners' Exhibit 3. Father only named Mother as a defendant, and M.B. and A.B. intervened. Subsequently, the court awarded M.B. and A.B. sole legal and primary physical custody of Child after Father did not call in to the custody conciliation. *See* N.T., 4/17/18, at 92; Petitioners' Exhibit 4. The order provided Father "such rights to partial custody as the parties may agree." Petitioners' Exhibit 4. Father made no further attempts to obtain a more favorable custody order, or to seek court intervention to permit him to see Child. *See* N.T., 4/17/18, at 119. Father's only communication with Child has consisted of sending letters and cards directed to Child approximately every three months. *See id.* at 99-107, 116.

On November 15, 2017, M.B. and A.B. filed a petition to involuntarily terminate Father's parental rights to Child. On April 17, 2018, the court held

a hearing on the petition.[2] M.B. and A.B. testified on their own behalves, as did Father. Further, M.B. and A.B. presented the testimony of Mother. Father presented the testimony of his son, C.C. On October 2, 2018, the court entered an order involuntarily terminating Father's parental rights to Child. Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father raises the following issues for our review:

A. Whether the [orphans'] court committed an error of law, and/or abused its discretion in terminati[ng] the parental rights of [Father?]

B. Whether the [orphans'] court committed an error of law, and/or abused its discretion in finding [Father's] parental rights were properly terminated under 23 Pa.C.S.A. § 2511(a)(1)[?]

C. Whether the [orphans'] court committed an error of law and/or abused its discretion in determining that parental rights should be terminated pursuant to 23 Pa.C.S.A. § 2511(b)[?]

---

[2] We briefly address, *sua sponte*, the representation of counsel for Child. **See In re: K.J.H.**, 180 A.3d 411, 412-414 (Pa. Super. 2018). By order of court dated December 6, 2017, the orphans' court appointed Attorney Harry Fenton as counsel for Child. **See In re T.S.**, 192 A.3d 1080 (Pa. 2018) (citing **In re Adoption of L.B.M.**, 161 A.3d 172 (Pa. 2017)) (stating that, pursuant to 23 Pa.C.S.A. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for his or her legal interests, which our Supreme Court has defined as the child's preferred outcome). Attorney Fenton appropriately represented Child's legal interests by cross-examining witnesses, by submitting a post-hearing brief arguing for termination of Father's parental rights, and by filing a brief on appeal in support of affirming the court's termination of Father's parental rights.

Father's brief at 4 (unnecessary capitalization and suggested answers omitted).[3]

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to Section 2511(a)(1) and (b). Section 2511(a)(1) and (b) provide as follows.

> **(a)  General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> > ***

_____

[3] Father's brief combines the argument for his first and second issues.

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1) and (b).

With respect to Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citation omitted).

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child <u>and</u> refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child <u>or</u> fails to perform parental duties.

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998) (emphases in original) (citation omitted).

Our courts have explained that parental duty "is best understood in relation to the needs of a child." *In re Burns*, 379 A.2d 535, 540 (Pa. 1977).

A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive

interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life.'

*Id.* (citations omitted).

Addressing the performance of parental duties by incarcerated parents, our Supreme Court discussed ***In re Adoption of McCray***, 331 A.2d 652 (Pa. 1975), and explained as follows:

Applying in ***McCray*** the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." ***Id.*** at 655. We observed that the father's incarceration made his performance of this duty "more difficult." ***Id.***

***In re Adoption of S.P.***, 47 A.3d 817, 828 (Pa. 2012). The ***S.P.*** Court continued:

[A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. *Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child.* Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

*Id*. (citation omitted) (emphasis added, brackets in original).

- 6 -

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, we have explained that the court must engage in three lines of inquiry:

> (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

***In re Z.S.W.***, 946 A.2d at 730 (citation omitted).

In addressing Section 2511(a)(1), the orphans' court credited Father's testimony that he regularly sent letters and cards to Child. ***See*** Orphans' Court Opinion, 10/2/2018, at 14-15. The court characterized the letters as addressing Father's own life and routine, along with future plans of what Father intended to do with Child. ***See id.*** at 13. The court believed that the letters were sent "on a three month schedule so as to avoid the termination of his parental rights." ***See id.*** The court acknowledged Father asserted M.B. and A.B. placed barriers to prevent him from contacting Child, but ultimately rejected Father's position. ***See id.*** at 13-16. The court concluded that Father failed to explain why he did not take steps to foster a relationship with Child, and that Father failed to fulfill his parental duties for at least six months preceding the filing of the petition to involuntarily terminate his parental rights. ***See id.*** at 15-16.

Father argues the orphans' court erred because M.B. and A.B. put up a wall between Father and Child to prevent Father from performing any parental duties. ***See*** Father's brief at 19. Father faults M.B. and A.B. for not calling

him while he was incarcerated, not providing Father with their phone number, and not attempting to be placed on Father's prison contact list. *See id.* Father also notes that he sent letters every three months to Child and filed a custody complaint. *See id.* at 18-19. Father argues that his prison counselor's failure to assist him with calling in to his custody conciliation precluded him from being afforded any custody rights regarding Child while he was incarcerated. *See id.* at 21. Father insists that "he did everything that he could, within his power and control, to maintain a relationship with [Child]." *See id.* at 23.

However, the record supports the orphans' court's conclusion that Father refused or failed to perform parental duties. Father acknowledges that he has never met Child, who is now four years old. *See id.* at 92-93. His sole contact with Child is to send letters and cards, approximately every three months, "like clockwork," to show that he "did something." *See id.* at 100, 116. However, Father never called Child, never provided Child financial support, and never asked for photographs directly from M.B. and A.B. *Id.* at 107, 125-26, 129-30. Further, Father never requested information regarding Child's health, welfare, or wellbeing from M.B. and A.B. *See id.* at 126. Father did attempt to file for custody in 2015, but, after he failed to call in to the hearing, Father took no further steps to obtain a custody order that allowed him contact with Child. *See id.* at 119.

Here, the orphans' court determined that M.B. and A.B. established, by clear and convincing evidence, a basis for termination of Father's parental

rights under Section 2511(a)(1). Based on the evidence before it, the orphans' court was entitled to find that Father did not exert a sincere and genuine effort to maintain a parent-child relationship, using all available resources to preserve the parental relationship while exercising "reasonable firmness" in resisting obstacles placed in the path of maintaining the parent-child relationship. **See In re C.M.S.**, 832 A.2d at 462.

Indeed, it is undisputed Father has never met Child, and only sent limited communications directed to Child. The evidence establishes Father failed to perform any parental duties for Child. Accordingly, we discern no abuse of discretion or error of law in the orphans' court's analysis, and we will not disturb the orphans' court's findings with regard to Section 2511(a)(1).

We next determine whether termination was proper under Section 2511(b). This Court has stated that the focus in terminating parental rights under Section 2511(a) is on the parent, but it is on the child pursuant to Section 2511(b). **See In re Adoption of C.L.G.**, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court has stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." **In re K.M.**, 53 A.3d 781, 791 (Pa. Super. 2012). In **In re E.M.**, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to

discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791.

***In re: T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." ***In re Z.P.***, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." ***In re K.Z.S.***, 946 A.2d 753, 762 (Pa. Super. 2008) (citation omitted).

A parent's abuse and neglect are likewise a relevant part of this analysis:

> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (citations and internal quotation marks omitted).

Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d at 763. "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (citation omitted).

In terminating Father's parental rights pursuant to Section 2511(b), the orphans' court concluded that Father never met nor interacted with Child and, therefore, that no bond existed between Father and Child. *See* Orphans' Court Opinion, 10/2/18, at 16. Further, the court observed that M.B. and A.B. have had custody of Child since he was an infant, and provided for all of his medical care and schooling. *See id.* at 16-17. The court noted that Child developed a strong bond with M.B. and A.B., and refers to them as "mom and dad." *See id.* at 17. The court determined that termination of Father's parental rights meets Child's needs and welfare. *See id.*

Father argues the orphans' court erred because his incarceration cannot be used as a ground for terminating his parental rights. *See* Father's brief at 30. Father asserts that his rights cannot be terminated due to a lack of housing, furniture, income, clothing, and medical care, because his lack of

these items is beyond Father's control due to his incarceration. *See id.* Father acknowledges that his incarceration is the result of his actions, but notes he "hopes to be released from prison on April 27, 2019. . . ." *See id.*

The record supports the orphans' court's conclusion that termination of Father's parental rights best serves Child's needs and welfare. There is no evidence of any bond between Father and Child. During Father's testimony, he acknowledged that he has never met Child, as Child was born while Father was incarcerated. *See* N.T., 4/17/2018, at 92-93. Father testified that his plan, upon his release from prison, would be to have supervised visitation with Child so that they could get to know each other and form a bond. *See id.* at 112. M.B. testified that Child would not recognize Father and does not have a bond with Father. *See id.* at 34. M.B. and A.B. both testified that Child has bonded to them and their family. *See id.* at 32-33, 80-81. M.B. and A.B. have provided care for Child, and Child refers to M.B. and A.B. as "mom" and "dad." *See id.* at 28-29, 33. Child has become part of their family, and M.B. and A.B. wish to adopt Child. *See id.* at 32, 82-83.

The orphans' court appropriately concluded that Father has no bond with Child. Father has never even met Child, let alone provided care for Child. Meanwhile, Child has been cared for by M.B. and A.B. for nearly his entire life, and M.B. and A.B. have provided Child with love, safety, stability, and support. Accordingly, it is clear that terminating Father's parental rights would best serve Child's needs and welfare pursuant to Section 2511(b).

Based on the foregoing, we conclude that the orphans' court did not commit an error of law or abuse of discretion by involuntarily terminating Father's parental rights. Therefore, we affirm the court's October 2, 2018 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2019